# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

OK LUMBER COMPANY, INC., an Alaska Corporation,

Debtor.

Case No. F08-00451-DMD

Chapter 11

**Filed On 9/5/08**

## MEMORANDUM REGARDING CIVIL CONTEMPT AND DEBTOR'S APPLICATIONS TO EMPLOY COUNSEL

The debtor, OK Lumber Company, is a building supply retailer in Fairbanks. Due to new found competition from major chains, particularly Lowe's and Home Depot, it has suffered major financial setbacks. OK Lumber retained California attorney Alfred Dovbish to work out an accommodation with its lender, Denali State Bank (DSB). Dovbish's efforts were unsuccessful. He prepared a chapter 11 petition for the debtor, which was filed on July 31, 2008. DSB was scheduled as a secured creditor with a claim in excess of $1 million. DSB's security interest encumbers virtually all assets of the debtor, including inventory, accounts, and proceeds thereof, as well as real property.

Following the filing of its petition, OK Lumber continued to operate its business. However, it stopped depositing funds in an account it had with DSB and opened a new account at a different institution. Concerned about the post-petition dissipation of its cash collateral, DSB filed a motion to prohibit use of cash collateral on August 4, 2008. An expedited hearing on the motion was held on August 8, 2008. Mr. Dovbish appeared telephonically at the hearing on behalf of the debtor. None of the debtor's principals attended the hearing.

At the hearing, the court told Mr. Dovbish that the Bankruptcy Code absolutely prohibited the debtor from using, expending or disbursing DSB's cash collateral absent consent of DSB or prior court approval.[1] The court also ruled that any proceeds from the sale of DSB collateral being held in other bank accounts of the debtor were to be turned over to DSB. The court specifically rejected Mr. Dovbish's request to permit the debtor to maintain separate bank accounts. The court also required the debtor to file a report and accounting for all of OK Lumber's post-petition sales and disbursements by August 13, 2008. Following the ruling, Mr. Dovbish requested a reporter's transcript.

A written Order Prohibiting Use of Cash Collateral was entered after the conclusion of the hearing.[2] A copy of the order was promptly sent to Mr. Dovbish via facsimile at the California contact number he had provided to the court. DSB's attorney delivered a copy of the order to the office of Richard Kruckenberg at OK Lumber on the afternoon of August 8, 2008. Nonetheless, the debtor continued to use cash collateral.

The debtor continued to sell DSB's inventory on August 9, 10, 11 and 12, 2008. Sales for those four days totaled $16,438.00. DSB moved for the issuance of an order to show cause ("OSC") on August 11, 2008. The court issued an OSC on August 13, 2008, which scheduled a hearing to determine whether monetary sanctions should be imposed upon the debtor, its principals and Mr. Dovbish for contempt of this court's order of August 8, 2008.[3] The basis for contempt was the alleged failure of the debtor to stop using DSB's cash

---

[1] 11 U.S.C. § 363(c)(2).

[2] Docket No. 29, entered Aug. 8, 2008.

[3] Order to Show Cause, entered Aug. 13, 2008 (Docket No. 44).

2

collateral, to turn over all proceeds from the sale of DSB's collateral, and to file an accounting. The order threatened sanctions of $500.00 per day, per person, for failure to follow the court's order. The order was directed not only to the debtor, but its president and owner, Richard Kruckenberg, the debtor's controller, Mr. Holden, and Mr. Dovbish as well.

The day before the OSC was issued, on August 12, 2008, the debtor deposited $8,122.70 and $2,437.33 into the debtor's operating account with DSB. The debtor's total sales for the period from August 9th through the 12th, however, totaled $16,438.00, leaving a discrepancy of $5,878.00. The debtor submitted business records on August 14th and 15th in response to the OSC, but nothing contained in those records explained or resolved this discrepancy.

A hearing on the court's OSC took place on August 18, 2008. Three days prior to the hearing, on August 15, 2008, OK Lumber filed an application to retain attorney David Bundy as its lead counsel. Mr. Bundy attended the OSC hearing on August 18 on the debtor's behalf. He agreed to close the business and stop using the bank's cash collateral. He argued that the debtor's principal, Mr. Kruckenberg, was ignorant of the meaning of the court's order which prohibited the use of cash collateral.

Alfred Dovbish attended the OSC hearing on his own behalf. He provided a variety of feeble and embarrassing excuses for his failure to advise the debtor regarding the prohibitions against use of cash collateral. I find these excuses meritless.

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors

3

violated a specific and definite order of the court."[4]  But a party must be shown to have knowledge of what the order mandates or prohibits before a contempt violation can be found.[5]  In order to impose sanctions for contempt in this case, it must be shown that the parties knew that they were prohibited from using DSB's cash collateral and intentionally violated that prohibition.

In any bankruptcy case, a trustee may not use, sell or lease cash collateral without the consent of the secured creditors.[6]  A chapter 11 debtor in possession stands in the shoes of the trustee and is subject to the same mandate.[7]  Mr. Dovbish represented himself as an experienced chapter 11 attorney, but forgot to inform his client about this fundamental tenet of bankruptcy law.  From the inception of this case, OK Lumber used DSB's cash collateral to pay thousands of dollars in bills to unsecured creditors.  Mr. Dovbish failed to inform his client or its principals that this conduct violated the Bankruptcy Code.

Mr. Dovbish attended the hearing on August 8, 2008.  He was told in frank and unequivocal terms by the court that: (1) the debtor could not use cash collateral; (2) the debtor had to return all cash collateral to DSB, and (3) that a report and accounting was necessary.  In spite of the court's verbal admonitions and the prompt entry and service of a written order that laid out these terms, the debtor continued using DSB's cash collateral.  The

---

[4] *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190-91 (9th Cir. 2003), *citing Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002).

[5] *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1007-08 (9th Cir. 2006) (holding that knowledge of the discharge injunction must be found before contempt order will issue).

[6] 11 U.S.C. § 363(c)(2).

[7] 11 U.S.C. § 1107(a).

4

debtor also failed to turn over DSB's cash collateral.  Dovbish did file accountings, but they reflected the debtor's ongoing non-compliance with the order.

Dovbish failed to promptly advise his client about the prohibition against the use of DSB's cash collateral and the requirement to surrender cash collateral that were contained in the August 8 order.  Due to this failure, the debtor and its principals lacked the knowledge they needed to comply with the order.  Dovbish's reasons for failing to advise his client of the need to comply with the order were unpersuasive to this court.

The OSC provided for the imposition of a monetary sanction in the sum of $500.00 per day, until the debtor fully complied with the August 8 cash collateral order.  DSB voluntarily lowered that amount to $250.00 per day in a subsequent pleading.  I find that Dovbish violated the provisions of the cash collateral order from August 9, 2008, through August 14, 2008, or a period of 6 days.  I have selected the date of August 14, 2008, because that was the date by which the debtor had turned over to DSB what cash collateral it did have and Dovbish had filed the first accounting regarding use of cash collateral.  DSB is entitled to recover $1,500.00 from Mr. Dovbish for civil contempt.

With regard to the debtor, Mr. Kruckenberg and Mr. Holden, no sanction will be imposed.  None of these parties understood the contents of this court's August 8 cash collateral order. "Cash collateral" is a term of art in bankruptcy which is generally not understood by a lay person.  Accordingly, even though the August 8 order was served upon Mr. Kruckenberg's office by DSB's counsel, I find that neither he, nor Mr. Holden or the debtor, understood its contents. Lacking such understanding, under controlling Ninth Circuit law, these parties cannot be held in contempt for violating the August 8 order.

5

There are four additional matters which were pending at the time of the OSC hearing. One was the debtor's application to employ Mr. Dovbish as counsel. Mr. Dovbish filed applications to appear in this case *pro hac vice* and for exception from this court's electronic filing requirements. The fourth pending matter was the debtor's application to employ David Bundy as its lead counsel in this case. The debtor's application to employ Mr. Dovbish will be denied. Mr. Dovbish's applications to appear *pro hac vice* and for exception from electronic filing requirements are thus moot and will be denied on that basis.

The debtor's application to employ David Bundy as lead counsel will be granted, except that Mr. Dovbish will not be permitted to continue to appear as co-counsel with Mr. Bundy in this case. Due to Mr. Dovbish's failure to advise OK Lumber of the cash collateral provisions in the Bankruptcy Code, which are applicable in all chapters of bankruptcy, DSB has been substantially harmed in this case. I feel Mr. Dovbish should not carry even a minor role, at this point, in the debtor's representation. The retainer he received from the debtor, in the sum of $5,000.00, must be promptly returned to the debtor. Mr. Bundy will be permitted to appear in this case as the debtor's sole bankruptcy counsel.

Conclusion

I conclude that Mr. Dovbish violated the terms of the August 8 cash collateral order for a period of six days. Sanctions of $250 per day, or a total of $1,500.00, are imposed upon Mr. Dovbish. He shall pay this sum to DSB. Further, due to Mr. Dovbish's conduct in this case, the debtor's application to employ him as counsel and his applications to appear in this case *pro hac vice* and to be excepted from electronic filing requirements will

6

be denied.  The debtor's application to employ Mr. Bundy as counsel will be granted. However, Mr. Bundy will be the debtor's sole bankruptcy counsel; Mr. Dovbish will not co-chair in the debtor's representation.  Mr. Dovbish must return the retainer of $5,000.00 that he has received to the debtor.

An order and judgment will be entered consistent with this memorandum.

DATED: September 5, 2008.

> BY THE COURT
>
> /s/ Donald MacDonald IV
> DONALD MacDONALD IV
> United States Bankruptcy Judge

Serve:   A. Dovbish, Esq.*
         J. DeWitt, Esq.
         D. Bundy, Esq.
         W. Hupprich, Esq.
         U. S. Trustee
                 09/05/08

* Courtesy copy served upon Mr. Dovbish via facsimile 9/5/08 - √ aam

7